' DbBlanc, J.
By an act of the Legislature of the State, approved on the 25th of March 1874, five persons, to wit: the president of the police jury of the parish of Plaquemines, H. P. Eernochan, H. Mahony, Dr. Joseph B. Wilkinson, and O. B. Sarpy, were appointed commissioners, to ascertain, determine and report to the police jury of said parish, the amount of its indebtedness. Of these five commissioners, three were then members of the police jury to which they were to make their report. Those three members were Butler, the president of that body, Mahony and Sarpy. Under these circumstances, the report of the commissioners could hardly have failed to be adopted by the police jury. Those who, at that time, represented the parish of Plaquemines in the General Assembly, were Butler and Mahony, and it seems evident that one of their purposes, in urging and procuring the passage of the act already referred to, was to secure, in the board of commissioners, a majority favorable to their scheme.
In the first and the most important of the six sections of the act of the 25th of March 1874, it was provided “that the police jury be 'and they are hereby authorized to issue bonds of said parish, duly signed by the president and clerk of said police jury, and sealed with the seal of the district court of said parish, to the amount of the debt, as would be reported by the commissioners, payable to bearer, in ten years from their date, and bearing interest at the rate of eight per centum per annum; the interest to be paid annually. Said bonds to be.in amounts of not less than fifty, nor more than one hundred dollars, and exchange *771 able for any of the debts and obligations of said parish; provided that the ordinance of said police jury making provision for the issue of bonds under this act shall not have the effect of law unless it shall receive the unanimous vote of every member of said police jury; and provided further that said bonds, when issued, shall be countersigned by each and ev.ery member of said police jury, which shall be evidence of the fact that the issuing of said bonds is unanimously approved' by them.”
These wise provisions were intended as the passport of the act, but in reality were but vain and simulated precautions : the authors of the scheme had, and they knew it, all that they needed to carry it out: an undoubted majority in the board of commissioners and a partisan in every member of the police jury. According to their official report made to the police jury, the commissioners met at the court-house on the 1st of April 1874, a second time on a subsequent day which is not specified, and finally — to deliver their report — on the 18th of May 1874, when three of them — Butler, Mahony and Sarpy, announced to themselves, as police jurors, and — so far as it appears in the record — to another of their colleagues, that — from the 16th of August 1871 to the 17th of November, 1873 — the police jury of the parish of Plaquemines, had issued certificates of indebtedness or warrants against said parish, for $92,857 20: that, after deducting those of said certificates or warrants which had been destroyed, and approximating outstanding claims for the years 1870,1871,1872 and 1873, they had found that the debt of said parish amounted, on the 17th of November 1873, to $68,491 27.
On motion of Mr. Sawyer, the parish treasurer was then authorized, by the police jury, to issue bonds of each one hundred dollars, to be exchanged against the thus rapidly ascertained, determined and announced indebtedness of the parish of Plaquemines, in conformity with the act of the 25th of February 1874. All this was done on the 18th óf May, and — on that day — bonds of the required description were signed, sealed and — we presume — delivered. This extraordinary celerity in the discharge of so important a duty as that entrusted to the commission• and the police jury is easily'accounted for: there was, there could have been no difference of opinion between three of the members of the commission, who constituted a quorum, and those who —at that date — composed the police jury.
In alleged accordance with the act of the Legislature and the ordinance of the police jury of the l'8th of May 1874, bonds to the amount of thirty-nine thousand six hundred dollars were issued, and many of these sold in the city of New Orleans, within a short delay after their delivery, at from fifteen to thirty cents on the dollar; and it is more than probable that the whole of the bonds authorized by the ordinance *772 would have been so issued and disposed of, were it not that, on the 10th of June 1874, several taxpayers of the parish of Plaquemines obtained from the Second District Court an order enjoining any additional issuance of said bonds and prohibiting the assessment, levy and collection of any tax to pay either the principal or interest on the same.
The grounds on which the taxpayers rely to sustain their injunction, are;
1. That the act of the Legislature, of the 25th of Eebruary 1874, is unconstitutional and void, in this :
It proposes to acknowledge debts, without even the consent of the pretended. debtor.
It creates an agent without the principal’s assent.
It delegates to that agent, and to be exercised ex parte, a power which can be exercised by only the courts of this State.
The bonds issued by the parish officers are in excess of the revenues of the years in and for which they were issued.
2. That the act of 1874 was passed in the interest of Butler, Mahony and their accomplices, to procure the issuance of bonds for debts which have never existed, and for debts which — previously—had been declared invalid by the courts of this State.
3. That the preliminaries which, according to said act, were to be, have not been performed by the board of commissioners before issuing the bonds.
I.
The evidence does not sustain the charge that any improper influence was used to procure the passage of the statute of the 25th of Eebruary 1874, and that statute — construed with regard to the objects for which it was enacted — is not unconstitutional. Those objects were — not to create any debts — but to ascertain what was then the amount of already existing debts for which the parish of Plaquemines was liable, and to authorize its police jury to settle with its creditors in bonds bearing interest and payable in ten years. The commission appointed for that purpose could not be and was not invested with the power of finally acknowledging or finally rejecting any claim, but was directed to investigate the matter submitted to their consideration and report the result of their investigation. Their report was binding neither as to any rejected, nor as to any acknowledged claim, and could have been approved or disputed by either the police jury to which it was made, the taxpayers or any creditor of the parish.
The law specially provides how and by whom the accounts against a parish shall be approved, and the only task of the commission appointed by the act of 1874, was to make out a detailed list of those who held the legal evidence of any claim against the parish. They *773 could not have justly denied the correctness of a bill of fees approved by a judge, nor classed as a fundable debt, one which would have been previously passed upon and rejected by a competent court. Their exclusive function was to inspect and report. They reported, but did they inspect ?
II.
Before proceeding to examine any other question presented in this case, we have to decide whether, as contended by those who have intervened in this suit, the plaintiffs, who are taxpayers of the parish of Plaquemines, can not inquire into the consideration of the bonds held by them, the intervenors, and which they purchased before maturity. For at least two reasons, the taxpayers could, as they did, inquire into the contested consideration of bonds subscribed and delivered by their agents.
1. Those who represent a State or a parish, derive their powers from the law, and the State or parish can be bound but by those of their acts expressly embraced within the scope of their limited agency, or which — as an inevitable consequence — are inseparable from, and must invariably precede or follow the exercise of the delegated powers. Any act done beyond the scope of that agency is an absolute nullity, which may be urged and contested by the principal or any interested party; and those who purchase or discount the obligations of a parish must — at their peril — ascertain, not merely that they bear the signatures of the parish’s agents, but also that, in subscribing the obligations, the agents have not exceeded their powers. How, may it be asked, can that fact be verified ? It can be verified without trouble or difficulty. Whatever may be their character or extent, claims against a parish are evidenced by vouchers deposited in a specified office, and whomsoever they were — planters or brokers — those who, to pay their taxes or to speculate, intended to procure any of the bonds issued under the legislative act of 1874, were bound to ascertain — by an inspection of the law, the ordinance, the commissioner’s report and, if any, the deposited vouchers — whether the bonds sought to be sold or which they proposed to buy had been issued for the consideration specified in the statute. To recover on such instruments and under the peculiar and express provisions of that statute, it is not enough to show that the police jury was empowered to issue them, it must also be shown — as the act of 1874 imperatively prescribes — that they were exchanged for debts and obligations of the parish of Plaquemines. As. to plaintiffs, interest in attempting to prevent the levy of a tax to pay what they consider as fraudulent claims, there can be no doubt. It is more than a right, it is a duty on the part of every citizen to denounce, resist, pursue and defeat illicit schemes which tend to increase the burden of taxation and destroy the value of property.
*774 hi.
In the brief of plaintiffs’ counsel, it is contended that the act of 1874 requires that the bonds be signed by the president and clerk of the police jury, and that, as those held by intervenors are signed by the president and secretary of that body, they are not in the form required by the act. We.believe otherwise; the clerk and secretary are 'but one and the same person, and the bonds are certainly signed by the person designated in the statute, whose real title is that of secretary. The difference in the title mentioned in the act and that which appears on the bonds, is merely a difference in the sound of a word and not one in the capacity of the officer.
IV.
In their printed argument, plaintiffs insist that the seal of the district court, which is but dimly impressed on the bonds, rvas thereto affixed — not by the clerk of said court — but by one who was not the custodian of that seal, and “ who had no authority to either take or use the same.” The act provides “that the bonds shall be sealed with the seal of the district court,” and — as it does not provide by whom this was to be done, it is manifest that it could have been done .by any one under the direction and in presence of the police jury.; In this respect, the law was strictly complied with.
V.
We consider as untenable the objection that “ the bonds issued are in excess of the revenues of the years in and for which they were issued.’’ The neglect of the police jury to provide for the payment of legitimate claims existing against the parish, neither did, nor could destroy its creditors’ rights. That neglect merely postponed the date of an inevitable payment; for, if — as we believe — a parish, should not hesitate to spend handfuls of gold to check and prevent any arbitrary taxation o^ the property of its inhabitants, it should, never hesitate to levy and collect the taxes necessary to compensate the services rendered by its officers, and which are indispensable to the very existence of its local government. This, on.its part, is not less than an obligation, and such an obligation can not be destroyed by the neglect, omission or refusal of a police jury to provide for its satisfaction. Under no law can the agent’s wrong relieve the principal of its legally incurred liabilities.
vi:
The interest coupons attached to the bonds'are not in proper form: they are not signed by any member of the police jury, but by only its secretary.- That is not Sufficient: that interest could have been stipulated in separate and legally certified coupons, but it could not have been — as it was — stipulated in instruments which, though attached to the bonds, aré distinct and disunited from them,-which-bear no num *775 ber, no mark to identify them, to connect them with the principal obligations, and which are not signed by a single one of the police jurors, the signature of every one of whom was indispensable to their validity. In this instance, however, those coupons were entirely useless: the only interest which could have been allowed by the police jury is correctly allowed, and the terms of its payment fixed in the body of the bonds, which — without the coupons — are complete in form.
VII.
The last and most important point which remains to be examined is: “Are the bonds herein referred to without consideration, and — if they are — had the intervenors the means of obtaining full information as to that fact ? ” The bonds were subscribed by parochial agents: the latters’ mandate was a statute printed on the backs of every one of the obligations subscribed by those agents, and — under that statute — to impart validity to those obligations — two essential conditions were required:
1. The commissioners had first to ascertain, determine and report what debts existed against the parish.
2. The report made, bonds were to be issued and exchanged for those debts.
Was this done? It may have been, but it does not appear that it was. A long and naked list, numbering six hundred and ninety claims, was prepared by Patrice Leonard and Armand Lartigue, who had been employed by the police jury, then partly composed — as-already stated, of three of the commissioners, and of two other parties, one of whom was not present'at the session of the 18th of May 1874, and signed the bonds at Mr. Butler’s house. That signature, giren without a prior examination of the reported claims, constitutes — nevertheless—the last instalment of the unanimity required by the act of 1874, in the police jury’s action concerning the issuance of the bonds.
^Shortly after these too hasty and unmatured operations, the bonds of a parish, whose property is valued at two millions five hundred thousand dollars, were sold to brokers in the city at from fifteen to thirty per cent. This fact, we admit, is not of itself sufficient to destroy their title to the negotiable bonds, bnt it was certainly sufficient to have put those brokers on inquiry, and to charge them with notice i every legal objection that might be urged against the validity of tho instruments ; for — as said by the Supreme Court of the United Stat in Marsh vs. Pulton County, “ this is a case where the holder was hour to look to the action of the officers of tho county, and ascertain wheth the law had been so far followed by them, as to justify the issue of bonds.”
TO Wallace, 683; 2 Otto, 595.
*776 In his book on negotiable instruments — sect. 777 — Mr. Daniel says : “ If the amount which the holder offers to take for the bond is totally insignificant as compared to its face value, it might be implied notice that there was something wrong about it, and if he took it without inquiry, he should not be protected. There is no conflict between this view and the cases in which it was held that gross negligence will not of itself be sufficient to impair the purchaser’s title. This is not merely gross negligence, but may be regarded as willful or fraudulent blindness, and abstinence from inquiry so great as to amount to evidence of bad faith. For it is the obvious suggestion of reason that a bona fide owner would not throw away his property for a mere song, and that the holder acted in bad faith when he acquired it for comparatively nothing.”
The bond or warrant of a State or a parish is more safely guaranteed than the note of the richest bank of the world, and — except in times of general disaster — a State or a parish, administered by faithful and competent officers, should ever be ready to pay at its maturity, and dollar for dollar, every one of the warrants issued under their authority and representing an honest claim. Those who, either justly or unjustly, so violently suspect the validity of obligations due by the whole of the taxable inhabitants of a State or parish, as to purchase them for an insignificant fraction of their expressed value, can not reasonably expect that the suspicion that they thus cast on their validity, shall not follow them in their own hands and after a transfer. If they did, their expectation would be deceived: the rule is “ that the -consideration of such a transfer must be — not only apparently valid — but it must also be valuable. Otherwise, it does not protect the holder against prior equities existing between the immediate parties to the paper.”
Edwards on Bills and Notes, second edition, p. 354, 355.
Had intervenors referred to the commissioners’ report, and this— under the act of 1874 — they could have neglected to do but at their risks, they would have found:
1. That — on the first of April 1874 — three of those commissioners met and “ begged Mr. Lartigue, who was to be assisted by Mr. Leonard and themselves, “ to make out a statement of the affairs of the parish Plaquemines.”
2. That, on the 18th of May, the commissioners again met, and ibmitted a report based partly on a statement made by Mr. Lartigue d partly on their own approximation, in which they declared that— the 17th of November 1873 — the parish debt amounted to $68,491 27.
3. That, in the statement which accompanies the commissioners’ t, one party — the sheriff — is classed as the holder of seventy-eight as against the parish, four for $25, twelve for $50, three for $200, e balance — except two — for $100 and more, which may be due and *777 perhaps properly approved, but which — unexplained as they are in the statement — could not authorize the issuance, and do not establish — even partly — the consideration of the bonds. The only remark which follows one of them is “ costs for prisoner to New Orleans.”
The most of six hundred and ninety claims carried on the statement as those of the sheriff, are, mere figures, without dates, specifications or details, and — as a whole — that statement is, not only not supported, but contradicted by the evidence.
Leonard testified that — in the space of eight months — from June 1871 to March 1872 — the police jury of the parish of Plaquemines issued for forty thousand dollars of what is there known as the red-back warrants, which — in January 1876 — were, by this court, declared unauthorized by any law and invalid. The statement prepared by Lar-. tigue, with the assistance of Leonard, embraces — not only eighteen thousand dollars of destroyed warrants for which bonds were issued, but the parish indebtedness, as therein fixed, is — though not altogether —almost entirely composed of the red-back warrants, previously declared unauthorized and invalid, and which — regardless of the decree ■of this court — were exchanged for the now disputed bonds. To fix that indebtedness, Lartigue and Leonard got their data from stub-books, memoranda from the treasurer’s office and “ vouchers kept down there bij the committee.” Mr. Butler is the only commissioner who aided them ; but what he did is not shown.
Referring to the estimate of parish liabilities; plaintiffs’ counsel asked Lartigue: “How did you make it out?” “From the post-book and a statement I had already made for a committee appointed, eight or ten months before, to investigate what settlement of the parish debt could be effected.” “ You made that estimate out of the presence of the commissioners, did you not?” “Yes, sir, out of their presence.” He alone signed that estimate, and — it seems evident — he alone, occasionally assisted by Mr. Leonard, prepared it, and — really—when? Before the passage by the legislature of the act of 1874: for — after the prom; ligation of the act, he was only ten or twelve days engaged in reviewing ;<ad —we presume — copying the statement which he had made eight or ten months before.
The general rule is that, when a negotiable instrument has passed In the ordinary course of business into the hands of a bona fide holder, for a valuable consideration, without notice, the defendant can not avail himself of objections founded on the illegality of the instrument in its inception. This rule — however—has never been so stretched as to cover and protect the unauthorized acts of a clearly defined and limited agency: those who purchase, discount, or — in any way — take instruments subscribed and put in circulation by an agent, are always pre *778 sumed to have informed themselves as to the nature and extent of the mandate under which those instruments were issued. Whether they do- or not, and in whatsoever hands the negotiable paper may have passed, the principal can — under all circumstances — contest every act done beyond or in violation of the authority which he delegated.
In this instance, the report and statement introduced by the inters venors themselves, do not establish that the commissioners have, as they were bound to do, ascertained and determined, according to either the letter or spirit of the statute of 1874, the liabilities and indebtedness of the parish of Plaquemines; they merely reported without inspecting. To justify the issuance of the bonds, their report should have contained a detailed, statement of every claim, to whom and for what they were due, the dates when they accrued, whether they were already approved when - submitted to them, or merely acknowledged by them after the submission. The report should also have been accompanied by vouchers supporting every claim, and — in the absence of the original vouchers — by the creditor’s affidavit or any other substantial proof. We can notion the unsworn, naked, incomplete, dateless and unexplained statement of one man, lightly adopted by a commission, howsoever respectable that commission or that man may be — hold ah entire community liable for thousands of dollars. •
We, therefore, conclude:
1. That it does not appear that the indebtedness of the parish of Plaquemines was ascertained and determined, as required by the statute of 1874. .
2. That the ordinance of the police jury of the. 18th of May 1874 was prematurely adopted, and the contested bonds prematurely issued.
3. That the interest-coupons -attached to said bonds are invalid and void, and that the holders of those merely apparent obligations can recover neither on the bonds nor on the coupons.
4. That ,an injunction properly issued to restrain any additional issuance of said bonds, their exchange for any pretended indebtedness of, the parish of. Plaquemines, and- the assessment, -levy and collection of any tax to pay either the principal or interest on any of said bonds.
It can not be denied that — in 1874, said parish was largely indebted. Up to- at least that time and- for a period of several years, its affairs were— itBeems — ^administered with an unparalleled carelessness. Its warrants, numberless as. the leaves in the spring, were exchanged for its bonds ; and its bonds^-then as thereafter — sold and .purchased for a tittle — were partly used to pay an ever-increasing tax. In his settlement, the collector w-h© preceded Lartigue, returned to the police jury — in evidence of claims against the .parishj an amount of $40,000, and he — Lartigue—out of two settlements of thirty-two or four thousand dollars made by him as *779 treasurer, received — in’ cash — from five to seven hundred dollars, and the balance in warrants. This leaves the not unreasonable impression that the parish of Plaquemines may still be indebted to its officers and employees for services rendered prior to 1874. If so, those who now represent it; should not hesitáte to ascertain and acknowledge its lawful liabilities and provide for a satisfactory settlement of the same. As, however, neither .its original and real creditors, nor the transferrees of the latter, are or could have been concluded by the judgment of the lower court, as to any right or action which they may have acquired against it, before or since the issuance of the condemned bonds, we consider it useless to change or amend said judgment, which is affirmed with costs.